**Clarence Johnson GAINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–96–00408–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 9, 1998.

Kirk J. Oncken, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before AMIDEI, ANDERSON and SEARS, JJ.

## OPINION

AMIDEI, Justice.

Clarence Johnson Gains appeals his conviction by a jury for aggravated robbery. The jury assessed his punishment at 75 years imprisonment and a $10,000.00 fine. In two points of error, appellant contends (1) the trial court abused its discretion in allowing jurors to question appellant, and (2) the trial court erred in overruling appellant's objections to the State's reference to the range of punishment for aggravated robbery as opposed to robbery at the guilt-innocence stage of the trial. We reverse and remand for new trial.

On September 13, 1995, Christopher Lane was walking home from school when appellant pointed a gun at him and demanded his jewelry. Lane knew appellant only as "Bayou" and thought appellant was joking. Appellant told Lane he was not joking and would shoot Lane. Lane turned around to walk away and appellant came up behind him, put the gun to Lane's head, then tore two neck chains and one medallion from Lane's neck. Lane then walked across the street to call the police, turned and looked toward appellant, and appellant then ran away. Appellant testified that he used a toy gun to rob Lane.

In point of error one, appellant contends the trial court abused its discretion in allowing jurors to question appellant at the guilt-innocence stage. At the conclusion of appellant's testimony, the trial judge asked the jury:

THE COURT: Let me—before we let this witness go, is there any of the testimony that you could not understand because you'll have a real problem after you are in the jury room and you want us to repeat or have the court reporter read back? Is there anything that you didn't understand him to say?

JUROR: Yes, your Honor, where he said that he had the pis—he—his—I didn't understand the difference because it's hard to understand where he had the gun in his hand with his friends versus they were passing it around. He said—I didn't understand what was said about the gun with his friends.

THE COURT: Was this on the examination by his attorney or by the State?

JUROR: I believe it was the defense attorney.

THE COURT: All right. Do you want to clear that up?

MR. ONCKEN [appellant's trial counsel]: Well, I don't know that that's proper for me to do; but we can certainly find it on the record, Judge, that—

THE COURT: Well, that's what I'm trying to resolve because this is an almost impossible job for a court reporter to take down. It doesn't show up when it's a written record that she wasn't able to understand. But I can tell from what I've listened to it's hard to understand him. And it's obvious watching the faces of some of the jurors they're having a hard time understanding him and I can tell from the court reporter's expression and I just want to be sure before we break his testi-

mony that we don't have everything clear as far as the jury is concerned.

At the conclusion of appellant's further redirect and cross-examination, the trial judge then stated:

THE COURT: The whole purpose is that we understand that we're seeking justice. We can't do that if we don't know what's been said. And what did you want to ask?

[UNKNOWN] JUROR: I want to know is there a park across from the school? He keeps saying "park."

THE DEFENDANT [appellant]: It was in the park. That's across the street from the school.

[UNKNOWN] JUROR: A park that you play in or—

THE DEFENDANT: Yes. A park, like, a dome. Like, a dome over it with a basketball goal up, got a big old field over here with swings.

THE COURT: Yes, ma'am?

[UNKNOWN] JUROR: The first time he testified I had the impression that he took the toy gun from a child. The second time I had the impression he took it from one of his buddies.

Following other brief exchanges between a juror and the court, there was an off-record bench conference between the attorneys and the trial judge. Thereafter, the following comments and questions occurred in the presence of the jury:

THE COURT: I've been doing this for a hundred years, and by the same token they're going to ask about these very same questions. And if it's impossible from the notes that the court reporter has to read back to them, they just don't have the benefit of it. *I'm going to allow it whether it's proper or right or not. They're entitled to have a clear picture of what's being said* (emphasis added).

MR. ONCKEN: Is it because the Court thinks that what actually was said is not understandable?

THE COURT: I haven't—I haven't been able to understand it. The court reporter hasn't been able to understand it. It's obvious that some of—

[UNKNOWN] JUROR: The lingo. Judge, I can interpret if you like.

THE COURT: But you can see that some of us might have a problem.

[UNKNOWN] JUROR: Yeah.

MR. ONCKEN: I'm just going to object to—to the additional questions and the wondering about what should properly be discussed during deliberation. And we can find in the record, Judge, the answer to the question and have it interpreted.

Thereafter, the trial judge asked the court reporter if she took down all appellant's testimony. The court reporter stated she did not understand some parts of it and the trial judge again explained:

THE COURT: Well, that's—that's my whole problem. I think the jury is entitled to understand what the witness has said if he was talking in a foreign language have a right to have that interpreted for their benefit.

Who had another question? Yes.

[UNKNOWN] JUROR: He's using terminology "homeboy, partners, dudes" as if he was a leader of all these folks; and I can't determine whether he's the leader or he is—

THE COURT: Well, that's a—that's just a decision you're going to have to make. Anything else? All right. Let's have a seat.

Are you through, both of you?

When the trial judge first announced he was having trouble understanding appellant and asked appellant's counsel if he wanted to clear it up, appellant's counsel stated: "Well, I don't know that that's proper for me to do; but we can certainly find it out on the record, Judge, that—." On appeal, appellant contends the trial judge interrupted appellant's counsel and cut him off before he could completely explain his objection. The trial court then stated to the jury that appellant's testimony was hard to understand and appellant's counsel proceeded with the redirect examination with interruptions by jurors and the trial court as set out above.

Appellant cites *Morrison v. State*, 845 S.W.2d 882 (Tex.Crim.App.1992) as authority

for the proposition that jurors will not be permitted to question witnesses. *Id.* at 889.

The State argues that the trial court did not abuse its discretion because the appellant's testimony was incoherent, unintelligible, and incomprehensible, citing the dissent in *Morrison* as appropriate to this case. *Id.* at 900. The State further argues appellant did not object to the procedure and therefore has waived error.

 Appellant started to object to the procedure but was cut off by the trial judge. In *Morrison,* the appellant objected "to the process" on the grounds that it is "not authorized by law." *Id.* at 883 n. 1. In that case, appellant's objection was overruled, but appellant obtained a running objection to "the whole process." *Id.* No complaint was made by the State in *Morrison* that appellant had failed to object or the objection was not specific under rule 52(a), Texas Rules of Appellate Procedure. In this case, the State contends that appellant waived error under rule 52(a), Texas Rules of Appellate Procedure, because he failed to timely and specifically object when the trial judge first asked the jury if they understood appellant's testimony. Appellant's counsel stated he did not think the procedure was proper and was then interrupted by the trial judge who continued addressing the jury about the necessity of clearing up appellant's testimony. We hold the objection was sufficient to tell the court he objected to the whole procedure as improper. Furthermore, the court knew or should have known that it was improper for the jury to ask questions of a witness. Where the correct ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection. *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App.1977) (opinion on reh'g). Appellant's objection, which was interrupted by the trial court, was sufficient to apprise the court and opposing counsel that appellant objected to the procedure being utilized by the court. We hold that appellant did not waive his objection and has preserved error for review. As stated in *Morrison,* "[w]e know of no authority establishing or authorizing jurors to ask questions of witnesses in the criminal jurisprudence of this

state and therefore find the same to be error." *Id.* at 889. Appellant's point of error one is sustained.

The *Morrison* court further found the practice of permitting jurors to become active participants in the solicitation of evidence by questioning witnesses is not subject to a harm analysis. *Id.* at 889. Having sustained appellant's first point, we find it unnecessary to rule on appellant's second point of error concerning the prosecutor's reference to punishment during cross-examination of appellant at the guilt-innocence stage and again during the prosecutor's jury argument at the guilt-innocence stage. The judgment of the trial court is reversed and this case is remanded for a new trial.

ANDERSON, Justice, dissenting.

I respectfully dissent.

The sequence of events in this case preceding appellant's alleged objection supporting his first point of error indicates that the trial court was having a hard time understanding the testimony of the defendant and believed the jury was similarly confused. Accordingly, the trial court asked the jury whether or not they were having difficulty understanding the statements made by the defendant from the witness stand. A juror answered in the affirmative, and specifically mentioned the testimony regarding the source of the gun. The trial court then inquired as to whether this testimony was elicited during examination by defense counsel or the State. When the juror responded that defense counsel had been asking the questions on this subject, the trial court logically asked the defendant's attorney if he wanted to clear up the matter. Then appellant's counsel made the statement upon which point of error number one is predicated. The precise statement made by appellant's counsel in response to the trial court's offer to allow him to clear up the juror's question regarding the issue of the source of the weapon is as follows: "Well, I don't know that that's proper for me to do; but we can certainly find it on the record, Judge, that—."

The majority opinion reaches the merits of appellant's first point of error based on the

conclusion that the above-quoted statement by appellant's counsel was sufficient to preserve for appellate review the following asserted trial error: the trial court abused its discretion in allowing the jurors to question appellant from the witness stand. The majority finds that the objection was sufficient to apprise the court and the prosecutor that he objected to the whole procedure as improper. I believe the majority has misconstrued the intent of the statement made by defense counsel.

At the point in the trial at which the alleged objection was lodged, the trial court was attempting to allow defense counsel to clear up an issue about which a juror was confused. The trial court, following a statement by a juror that the defendant's testimony about the source of the pistol was confusing, stated—"Do *you* want to clear that up?". (emphasis added) Without more, there might be some question of whether the pronoun "you" referred to the juror who voiced some confusion, or to the defense lawyer. However, after the alleged objection by defense counsel, followed by another statement by the trial court about the jury's apparent difficulty understanding the defendant's testimony and the court's desire to make the evidence as clear as possible for the jury, defense counsel immediately began asking the defendant about how he obtained the pistol. Appellant's counsel commenced this redirect examination without making any other statements. I believe it is manifest from these events that defense counsel understood that the trial court was addressing *him* when it posed the question, do *you* want to clear this up? Otherwise, the trial court would have interrupted defense counsel and allowed the juror who had expressed some confusion to ask a clarifying question. In view of the sequence of events which occurred at trial, the alleged "objection" seized on by the majority was, when read in proper context, a statement by defense counsel to the effect that any clarification regarding the defendant's testimony was the State's job on cross-examination. Thus, I conclude that appellant's counsel was not objecting to the procedure of allowing jurors to ask questions—because that process had not yet commenced—but was merely voicing concern

about being coerced to clear up an issue which, depending upon his trial strategy, he might want to be somewhat less than clear when the jury retired to deliberate about the case. This interpretation is bolstered by the absence of the word "object" in defense counsel's statement, and the fact that defense counsel had *objected* to various cross-examination questions from the prosecutor leading up to the statement at issue here. Indeed, after defense counsel and the State concluded their examination of the defendant in the "clearing up" phase initiated by the trial court, the judge then permitted a juror to ask a question. However, there was no objection by appellant at that time.

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. TEX.R.APP. P. 52(a). Thus, as a general rule, appellate courts will not consider an alleged error that was not first called to the attention of the trial judge. *See Ieppert v. State*, 908 S.W.2d 217, 221 (Tex.Crim. App.1995). The requirement of an objection is fundamentally sound and necessary for the orderly presentation and resolution of alleged trial errors and appellate issues. *See id.* The record of the trial proceeding here is, in my view, very clear that defense counsel's statement was not an objection addressing the issue of juror questions, which occurred later, and that no objection was made when members of the jury did start asking questions. Accordingly, because he failed to make a timely objection stating the specific grounds for the ruling he desired the court to make, I believe appellant waived his first point of error.

Moreover, even if the statement made by defense counsel were deemed to constitute an objection, there are two reasons why it was inadequate to preserve the issue of the propriety of questions from the jury for appellate review. First, the objection was not specific. Rule 52(a) requires that an objection be specific. A specific objection is required to inform the trial judge of the basis of the objection and afford him or her an

opportunity to rule on it, and to afford opposing counsel an opportunity to remove the objection or supply other testimony. *See Maynard v. State,* 685 S.W.2d 60, 64–65 (Tex.Crim.App.1985). I do not find the alleged objection to be specific, and it certainly did not constitute an objection, as the majority holds, to the whole procedure of allowing jurors to ask questions.[1] Indeed, as noted above, the alleged objection by defense counsel at issue here questioned not whether any particular trial procedure was proper, but rather questioned whether some unspecified procedure was proper for defense counsel to do. It would take a clairvoyant judge to infer from the brief statement from defense counsel that he was making an objection to the process of allowing questions from jurors when the alleged objection contained none of the following words: "object to the process", "unlawful procedure", or "questions from jurors". When an objection is not specific, it fails to preserve the question for review. *See Garcia v. State,* 573 S.W.2d 12, 16 (Tex.Crim.App.1978).

Second, appellant failed to obtain a ruling on his alleged objection. The second requirement under Rule 52(a) for preserving a complaint for appellate review is that the complaining party must obtain a ruling on the party's objection. This requirement has been carried forward into the Texas Rules of Appellate Procedure, as amended effective September 1, 1997. *See* Tex.R.App. P.33.1(a)(2). Error is preserved for review only when the defendant receives an *adverse* ruling on his objection. *Ramirez v. State,* 815 S.W.2d 636, 643 (Tex.Crim.App.1991). The ruling must be conclusory; that is, it must be clear from the record the trial judge in fact overruled the defendant's objection or otherwise error is waived. *See id.* Here, the trial court's response to the defendant's alleged objection consisted of statements that the court was trying to resolve the meaning of portions of the defendant's testimony, as-

sist the reporter in getting an intelligible record, and clear up some confusion shared by the court and, apparently the jury, before the witness left the stand. In short, the trial court did not perceive the statement of defense counsel as an objection and, accordingly, did not make any statements in response that can in any manner be deemed an adverse ruling as required by Rule 52 and *Ramirez.* Accordingly, even if we accept the majority's hypothesis that the abbreviated statement by defense counsel was in fact an objection, error was nevertheless waived because appellant failed to obtain an adverse ruling thereon.

Because appellant's first point of error does not have the necessary predicate required by Rule 52 in the record of the trial to preserve the asserted error for appellate review, I would overrule that point of error.

---

1. The majority opinion relies to a large extent on *Morrison v. State* in reaching its decision to sustain appellant's first point of error. 845 S.W.2d 882 (Tex.Crim.App.1992). That case is distinguishable on its facts because there appellant made a timely objection to the process of allowing jurors to ask questions on the basis it was "not authorized by law", and just as importantly, appellant obtained a ruling on his objection. *See* 845 S.W.2d at 883, n. 1; *see also* concurring opinion by Clinton, J., 845 S.W.2d at 894, n. 12. While *Morrison* stands for the proposition that juror questioning is always unlawful, it did not say that it could be raised for the first time on appeal.