Thomas Ray Bowers v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-250-CR

THOMAS RAY BOWERS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

A jury found Appellant Thomas Ray Bowers guilty of aggravated sexual assault of a child under the age of fourteen and sentenced him to twenty-eight years’ imprisonment.  In four points, Bowers complains that the evidence is factually insufficient to establish penetration and that the trial court erred by allowing two State’s witnesses to express their belief in the truthfulness of the complainant’s allegations against him and by allowing testimony that children commonly provide more information about sexual abuse incidents over time.  We will affirm.

II.  Background Facts

The first incident of abuse occurred around the time that the complainant, A.B., was in the first grade.  A.B. was sleeping on a couch in the living room when she awoke to find that her father, Bowers, was touching her underneath her underwear.  A.B. testified that Bowers was touching her vagina and that he penetrated her vagina with his finger.  Bowers then told A.B., “It’s time to go to bed” and walked her to her bedroom, where A.B. laid down on her bed. Bowers lifted A.B.’s shirt and “started using his mouth on [her] breast,” saying, “[t]his is what your mom likes.”  Afterward, A.B. fell asleep, only to be awakened later by her mother.  A.B. testified that her mother “was coming in to make sure [she] was all right” because Bowers had just told her what happened.  Bowers was crying and “saying he was sorry.”

On a second occasion, A.B. went into the living room and told Bowers that she was having a hard time sleeping.  Bowers told A.B. to go back to bed, but after about thirty minutes A.B. returned and told her father again that she could not sleep.  Bowers told A.B. to lay down beside him on the couch.  A.B. testified that when she laid down beside her father on the couch he started touching her genitals on the outside of her underwear.  Bowers then moved his hand underneath A.B.’s underwear and continued touching her vagina; A.B. testified that he did not penetrate her on this occasion.  A.B. recalled that Bowers’s breathing “got heavier” during the encounter and that Bowers eventually told A.B. that she should go back to bed. 

A third incident occurred in A.B.’s parents’ bedroom.  A.B., her brother, and Bowers were in the bedroom watching a movie.  A.B.’s brother was at the foot of the bed, and A.B. and her father were at the head of the bed sharing a blanket.  A.B. testified that, under cover of the blanket, Bowers “pulled [her] panties down and grabbed [her] hand and put it on his private part and then put his finger on [her] vagina.”  She testified that Bowers did not penetrate her.  The touching ceased when A.B. asked her brother if he wanted to trade places with her, and Bowers said, “Yes, you should.”

Sometime after the third incident, when A.B. was in the sixth grade, Bowers and A.B.’s mother separated and A.B. went to live with her mom.  A.B. testified that she would still go visit her father from time to time and that during one of these visits she and her father took turns giving each other back rubs. A.B. told Bowers to stay on top of her shirt, but Bowers pulled her shirt up and began rubbing her under her shirt and moving his hands around to the front of her body.  Bowers then pushed A.B.’s bra up and began touching her bare breasts.  A.B. testified that she said nothing to Bowers while this was occurring and that he continued touching her breasts for ten minutes or longer before he stopped.

Bowers and A.B.’s mother divorced, and soon thereafter A.B. and her mother began seeing Patsy Harry, a marriage and family counselor.  Outside of A.B.’s presence, A.B.’s mother informed the counselor that Bowers had touched A.B. inappropriately.  A.B. testified that she was surprised when Harry began asking her about things that had happened with her father and admitted that she did not tell Harry everything during their counseling sessions in part because she “was still scared to talk about it” but also because she remembered some of the details later.  A.B. testified that during her sessions with Harry she may have denied that Bowers ever touched her vagina.  She testified that she told Harry that the only place Bowers had touched her was her breasts.

Patsy Harry suspected that A.B. had been sexually abused, so she called Child Protective Services (CPS) to report the alleged conduct, as she is required by law to do when she suspects any type of abuse.  However, Harry offered no details of the alleged abuse at trial and testified that it was not her place to determine whether the suspected abuse actually occurred.  She also testified over objection that, based on her training and experience, she found no inconsistency that would make her doubt the fact that A.B. had been sexually abused.

Penny Quinn, an investigator for CPS, was assigned to investigate the alleged sexual abuse of A.B.  As part of her investigation, Quinn interviewed Bowers.  She recalled his explanation of one of the incidents as follows:

[Bowers] told me that two to three years prior to our meeting, he had touched [A.B.]  He said that they had been sleeping on the couch and he woke up and his hand was on her stomach.  He said that [A.B.] told him he had touched her breasts, and he said he may have also touched her vagina and butt.  He wasn’t sure because he was asleep and he thought his wife was next to him.  The way that they had come to be sleeping together on the couch was [A.B.] had been sleeping with her brother and came out to tell her dad she couldn’t get to sleep.  So he said, “Lie down here on the couch with me,” which she did, and that’s when the fondling started.

After [A.B.] woke up and told him he had touched her breasts, she went back into her brother’s room.  Mr. Bowers told me that he immediately went and told his wife and explained to her that he had thought it was her on the sofa with him.  They had [A.B.] come in, and they all talked about it together.  He apologized to [A.B.] and said it would never happen again.  And there was never any report made, I understand, because Ms. Bowers believed that. 

Bowers also told Quinn that once, when A.B. came to visit him for the weekend, she approached him “wearing her bra and panties and a nightgown, and asked him to rub lotion on her.  He said that she lifted her nightgown up and he rubbed lotion on her back, her sides, and her stomach.  He said he may have accidentally touched her breasts.  He wasn’t sure.”  Bowers did not admit to any other incidents of a sexual nature between himself and A.B.  Bowers denied having any sexual intent during these encounters.

Quinn also interviewed A.B. and obtained a written statement of the alleged abusive incidents from the child.  Quinn testified that A.B. “denied that there was any penetration, any exposure, or that [Bowers] had asked her to touch him during those incidents.”  After completing the necessary interviews, Quinn contacted the Mansfield Police Department with the information she had gathered.

A.B. admitted that she never told Penny Quinn or the police in her written statements that Bowers had penetrated her.  However, she testified that she was not sure if anyone had specifically asked her about penetration, and she said that she did not understand what penetration meant until the prosecuting attorney explained it to her.  A.B. then reiterated that Bowers had penetrated her vagina with his finger.

III.  Factual Sufficiency

In his fourth point, Bowers contends that the evidence was factually insufficient to establish the element of “penetration” for the offense of aggravated sexual assault.  
In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the 
verdict
, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations. 
 Id.
 at 8-9; 
Clewis, 
922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder’s.  
Johnson
, 23 S.W.3d at 12. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

After reviewing the entire record in this case and outlining the relevant evidence above, we conclude that factually sufficient evidence exists to support the penetration element of Bowers’s aggravated sexual assault conviction.  The most important and relevant evidence that supports Bowers’s complaint is that (1) while speaking to Patsy Harry, Penny Quinn, and the police, A.B. either denied or failed to report that penetration occurred during any of the alleged encounters, and (2) Bowers denied penetration as well.  Nonetheless, this evidence does not outweigh the evidence that penetration did in fact occur. A.B. admitted that she denied penetration when speaking with Harry, Quinn, and the police.  However, she explained that she was scared, did not truly understand what penetration meant until it was explained to her by the prosecuting attorney, and testified that she did not remember some of the details until much later.  A.B. then testified unequivocally that Bowers did in fact penetrate her female sexual organ with his finger during the first of the four alleged encounters.  Furthermore, Bowers admitted that he may have touched A.B.’s vagina and bottom while laying on the couch with her.  Thus, the evidence of penetration is not so weak as to undermine confidence in the jury’s verdict, nor is the proof of guilt outweighed by contrary proof.  Viewing all the evidence in a neutral light, a rational jury could conclude that penetration occurred as alleged in the indictment.  We hold that factually sufficient evidence supports Bowers’s conviction and overrule his fourth point.

IV.  Witness Testimony

In his first and second points, Bowers complains that the trial court erred by allowing both Patsy Harry and Penny Quinn to express their belief in the truthfulness of A.B.’s allegations against him.  In his third point, Bowers also challenges Quinn’s testimony that children often provide more information about sexual abuse over time.  We will address each witness’s allegedly improper testimony in turn.

A.  Patsy Harry’s Testimony

With regard to Patsy Harry’s testimony, Bowers’s first point complains of the following exchange between the prosecutor and Harry on redirect examination:

Q.  As her counselor and based on your training and experience, do you have a belief about whether any sexual abuse occurred?

[DEFENSE]:  Your Honor, I’m going to object.  That’s improper for her to render an opinion as to whether or not it occurred.

THE COURT:  Overruled.

Q.  You can answer the question.

A.  I did not see any inconsistency that would say -- that would make me doubt.  So on that idea, I would say yes.

Rule 702 of the Texas Rules of Evidence allows expert testimony in the form of an opinion on scientific, technical, or other specialized knowledge if that testimony “will assist the trier of fact to understand the evidence or to determine a fact in issue.”  
Tex. R. Evid.
 702.  Expert testimony assists the trier of fact when the jury is not qualified “to the best possible degree” to determine intelligently the particular issue without the help of the testimony.  
Schutz v. State, 
957 S.W.2d 52, 59 (Tex. Crim. App. 1997).  However, the expert testimony must aid, not supplant, the jury’s decision.  
Id
.  Thus, expert testimony that constitutes a direct opinion on the truthfulness of a child complainant’s allegations is not admissible under Rule 702 because, rather than merely assisting the fact finder, such testimony essentially determines the issue of credibility in the jury’s stead.  
Yount v. State
, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993) (op. on reh’g).

We have reviewed the entirety of Patsy Harry’s testimony and conclude that her opinion that A.B. was sexually abused crossed the line of assisting the jury and should not have been admitted under Rule 702.  Viewed in context, the bulk of Harry’s testimony simply outlined how A.B.’s allegations of abuse were initially brought to the attention of the appropriate authorities.  Then, after testifying that it was not her place to determine whether abuse actually occurred, but only to report any suspected abuse, Harry nonetheless opined that she believed A.B.’s story.  Her only stated reason for the conclusion was that she “did not see any inconsistency that would . . . make [her] doubt” A.B.’s allegations.  The complained-of testimony did not impart any specialized knowledge to the jury that would assist them in determining whether A.B. had been the victim of sexual abuse; it simply informed the jury that Harry believed A.B.’s allegations.  As a result, Harry’s statement constituted a direct comment upon A.B.’s credibility, which improperly invaded the exclusive province of the jury.  We therefore hold that the trial court abused its discretion by allowing the testimony over Bowers’s objection.

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
Tex. R. App. P.
 44.2.  If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to the appellant’s conviction or punishment.  
Tex. R. App. P.
 44.2(a).  Otherwise, we apply rule 44.2(b) and disregard the error if it does not affect the appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d) (en banc).

Generally, the erroneous admission or exclusion of evidence is non-constitutional error governed by rule 44.2(b) if the trial court’s ruling merely offends the rules of evidence.  
Solomon v. State
, 49 S.W.2d 356, 365 (Tex. Crim. App. 2001); 
Reese v. State
, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000); 
Morales v. State
, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); 
Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
  We conclude that the trial court’s erroneous admission of Harry’s express belief in A.B.’s allegations is a non-constitutional error
 and rule 44.2(b) is applicable.  Therefore, we are to disregard the error unless it affected Bowers’s substantial rights.  
Tex. R. App. P.
 44.2(b).  A substantial right is affected when the error had a substantial and injurious effect or influence on the jury’s verdict. 
 King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall,
 961 S.W.2d at 643.  In making this determination, we review the record as a whole. 
 Kotteakos,
 328 U.S. at 764-65, 66 S. Ct. at 1248.

Taking the record as a whole, it appears that Harry’s improper expression of her belief in A.B.’s allegations was harmless.  Notably, Harry’s statement was coupled with a qualifying factor; that is, Harry indicated that she supposed the alleged abuse had occurred only because she saw no inconsistencies in A.B.’s story.  Harry made no comment about A.B.’s reputation for truthfulness generally, nor did she comment on the credibility of child sex abuse victims as a class.  Bowers cross-examined Harry immediately after the objectionable statement, at which point Harry agreed that, if she were provided with further information indicating inconsistencies in a child’s story, it would cause her concern.  Thus, the record shows that Harry’s opinion was by no means a final stamp of approval on the truthfulness of A.B.’s allegations.  Moreover, the record goes on to reveal that, unlike Harry, the jury was made well aware of inconsistencies in A.B.’s relation of events, particularly A.B.’s repeated denial to authority figures that Bowers had penetrated her sexual organ on any occasion.

Perhaps most importantly, the jury was presented with evidence of Bowers’s confession to a CPS investigator that he may have touched A.B.’s vagina and bottom, as well as her breasts.  Although Bowers denied any sexual intent, the touchings he confessed to corroborated A.B.’s testimony and provided the jury with the strongest evidence of the truthfulness of her allegations.  Finally, the jury had the opportunity to hear A.B. testify about each alleged incident of abuse and to examine her demeanor at trial.  In sum, the record indicates that the jury was presented with ample evidence, apart from Harry’s comment, to support a conclusion that the allegations of sexual abuse were true.

We conclude that, in the context of the entire case against Bowers, the trial court’s error in admitting the testimony in question did not have a substantial or injurious affect on the jury’s verdict and did not affect Bowers’s substantial rights.  
See King
, 953 S.W.2d at 271.  Thus, we disregard the error and overrule Bowers’s first point.  
See 
Tex. R. App. P. 44.2(
b).

B.  Penny Quinn’s Determination of “Reason to Believe”

In his second point, Bowers complains that Penny Quinn was improperly allowed to comment on A.B.’s credibility by testifying that CPS determined there was “reason to believe” that the alleged abuse occurred.  The challenged exchange occurred during the State’s redirect examination of Quinn:

Q.  (BY [PROSECUTOR]:)  Regarding back when this . . . case was closed, do you also make a finding of whether there’s reason to believe or reason not to believe?

[DEFENSE]:  Objection, Your Honor, as to relevancy.

[PROSECUTOR]:  Goes to her -- it was opened by defense, Your Honor.

THE COURT:  I’m going to allow it.

Q.  (BY [PROSECUTOR]:)  Did you find reason to believe in this case?

A.  Yes, my ruling was reason to believe.

Q.  And what does that mean exactly?

A.  We can have three findings in a case.  We can rule it out, which means we did not find any evidence that the abuse occurred. We can rule it unable to determine, which means we don’t have enough evidence to say whether it happened or not.  And reason to believe means that the evidence that we have gives us reason to believe that the sexual abuse occurred in this case.  And I felt like I had enough evidence in this case, with [A.B.]’s outcry and Mr. Bowers’ statement, to find reason to believe that he had sexually abused his daughter. 

To preserve error in admitting evidence, a party must make a proper objection and get a ruling on that objection.  
See
 
Tex. R. App. P.
 33.1.  In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection.  
See Valle v. State
, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003);
 Ethington v. State
, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).  An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection.  
Ethington
, 819 S.W.2d at 858.  Here, Bowers failed to object when Quinn testified a second time that the agency had concluded that there was reason to believe the sexual abuse had occurred and gave an explanation of what that determination meant.  As a result, any error in the admission of the objected-to testimony was cured.  
See Valle
, 109 S.W.3d at 509-10 (holding error waived when defendant failed to renew his relevancy objection the second time testimony was elicited that a witness approached the police out of fear for his life).

Even if Bowers had properly preserved this complaint for our review, we would hold that the trial court did not abuse its discretion in admitting the testimony.  Quinn indicated that the agency determination of “reason to believe” was based upon both A.B.’s outcry and Bowers’s own statements to Quinn, including his admission of improper physical contact with A.B.  Quinn did not vouch for the truthfulness of A.B.’s allegations, she simply stated what the agency’s ultimate determination was in this case and the basis for that conclusion.  
See Johnson v. State
, 970 S.W.2d 716, 720 (Tex. App.—Beaumont 1998, no pet.) (upholding admission of case worker’s testimony that CPS determined reason to believe sexual abuse had occurred). We overrule Bowers’s second point.

C.  Testimony that Children Provide More Details of Sexual Abuse Over Time

In his third point, Bowers complains that the trial court erred by allowing Quinn to testify, over his objection, that children commonly provide more information about sexual abuse incidents over time.  The complained-of testimony was elicited during redirect as follows:

Q.  Now as far as [A.B.], what she denied having -- I believe specifically you were asked about did she deny the penetration had happened, did she deny that he had exposed himself to her, did she deny that he had ever had her touch him.  Is it common or uncommon in your experience for children to admit more details over time?

A.  Yes.

[DEFENSE]:  I’m going to object.  I believe she has – 

[PROSECUTOR]:  We’ve gone into the fact that she’s trained in this area and that she’s educated in how to interview children.

THE COURT: Continue, Counselor.

Q.  (BY [PROSECUTOR]:)  Is it common or uncommon for children to admit more details as time passes?

A.  It’s very common.  Children often only give a very small part of what’s happened to them initially because they want to -- they want to know how everybody’s going to react to this.  And when they see that mom’s supportive, nobody hates them for telling about this, that things are going to be okay, they’re going to get help, then you’ll start getting more and more detail about what happened.  You often get -- you often hear of more incidents. 

Bowers argues that the above testimony should have been excluded because it was beyond the scope of Quinn’s qualifications and expertise and therefore not admissible as expert testimony under Rule 702.  
See 
Tex. R. Evid.
 702.  The State asserts that this complaint is not preserved for our review because Bowers failed to state the specific ground for his objection and the ground for objection was not apparent from the context in which it was made.
 To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley
, 983 S.W.2d at 265
.  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2).

Where the correct ground of objection is obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection. 
Gains v. State
, 
966 S.W.2d 838, 841 
(Tex. App.—Houston [14
th
 Dist.] 1998, pet. ref’d)
 
(citing
 Zillender v. State
, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977) (op. on reh’g)).  In this instance, although Bowers was prevented from stating the ground for his objection by the prosecutor’s interruption and the trial court’s subsequent instruction to the prosecutor to continue, the trial court and the prosecutor understood that Bowers was asserting an objection under Rules 701 and 702.  We therefore hold that, on the specific facts before us, Bowers has sufficiently preserved his Rule 702 complaint for our review.

We review a trial court’s decision to admit or exclude evidence under an abuse of discretion standard.  
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1200 (1997); 
Montgomery v. State
, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990).  We will not reverse a trial court as long as its ruling was within the “zone of reasonable disagreement.” 
Green
, 934 S.W.2d at 102; 
Montgomery
, 810 S.W.2d at 391.  The appropriate inquiry is whether the court acted without reference to any guiding rules and principles.  
Montgomery
, 810 S.W.2d at 380.

Whether Bowers’s objection was understood as a challenge to inadmissible expert testimony under Rule 702 or to improper opinion testimony by a lay witness under Rule 701, we conclude that the trial court did not abuse its discretion by overruling the objection and admitting Quinn’s testimony.  The State concedes that Quinn was not qualified to offer an expert opinion under Rule 702, but also points out that Quinn was not offered as an expert witness at trial.  Thus, if Quinn’s testimony was the sort of specialized scientific or technical knowledge contemplated by Rule 702, it should not have been admitted.  However, if the testimony was “in the form of opinions or inferences” rationally based on Quinn’s perception and “helpful to a clear understanding of the witness’ testimony or the determination of a fact in issue,” then the trial court did not err by admitting it.  
Tex. R. Evid.
 701.

As a general rule, “observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met.  This is true even when the witness has experience or training.”  
Osbourn v. State
, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002).  Even events not normally encountered by most people in daily life do not necessarily require expert testimony to be understood. 
Id
.  Thus, a lay witness may be capable, due to personal experience and knowledge, of expressing an opinion on a subject outside the realm of common knowledge.  
Id
.  “It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert.”  
Id
.

Having examined the entirety of Quinn’s testimony, we conclude that Quinn’s statement that children commonly offer more details of abuse over time was admissible as lay opinion under Rule 701.  Quinn testified that she had seven and a half years of experience as a CPS investigator and that part of her job is to work with local police investigating allegations of abuse of children seventeen and younger.  Quinn confirmed that she is trained in how to interview children and that, as a CPS investigator, she receives additional interview training each year.  She personally interviewed A.B. and testified that she would not be troubled if A.B. remembered and disclosed new details of abuse even one week prior to trial.  Quinn’s testimony thus established that she possessed extensive practical experience in how to effectively interview children about sexual abuse.

The prosecutor asked Quinn for an observation based upon her experience as a CPS investigator.  Although it is undisputed that Quinn is well trained in interacting with children, the observation she shared with the jury—essentially, that children open up more as they develop a trusting relationship with someone—is not a concept requiring expert testimony.  We conclude that Quinn’s opinion that children often open up slowly when speaking about sexual abuse was rationally based upon her perceptions, inferences, and impressions and that she was qualified to give such testimony as a lay witness.  
See Roberson v. State
, 100 S.W.3d 36, 39 (Tex. App.—Waco 2002, no pet.) (upholding admission of police officer’s testimony that sexual assault victims commonly reveal more details over time as proper lay opinion testimony under Rule 701).  It was not outside of the zone of reasonable disagreement for the trial court to conclude that Quinn’s opinion might be helpful to the jury’s understanding of issues in the case, particularly the issue of inconsistencies and changes in A.B.’s allegations over time.  We hold that the trial court did not abuse its discretion by admitting Quinn’s testimony.  Bowers’s third point is overruled.

V.  Conclusion

Having overruled each of Bowers’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: DAY, LIVINGSTON, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: August 29, 2003