**Opinion filed January 12, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00004-CR

_____

## TREVOR ASHLEY WOLFE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR42223**

## M E M O R A N D U M   O P I N I O N

The jury convicted Trevor Ashley Wolfe of assault family violence by strangulation. The trial court assessed his punishment at confinement for ten years in the Institutional Division of the Texas Department of Criminal Justice. The trial court suspended the imposition of the sentence and placed Appellant on community supervision for a term of ten years. In two issues on appeal, Appellant contends that (1) the trial court erred in allowing evidence of an extraneous offense committed by

Appellant and (2) the trial court erred in allowing a juror to ask a question about the evidence.  We affirm.

*Background Facts*

In the summer of 2013, Appellant was in a dating relationship with Kim Mitchell.  Appellant and Mitchell lived together in Midland.  However, Mitchell decided that she no longer wanted a relationship with Appellant and began moving her belongings out of Appellant's home.  On the evening of July 27, Mitchell arrived at Appellant's home with three friends: Marty Brown Rex, Doc Rex, and Tim Frazier.  The four individuals brought two vehicles and a trailer for the purpose of moving Mitchell's belongings out of Appellant's home.  Appellant and his father, Larry Wolfe,[1] were also present at Appellant's home.

Marty Rex is a former corrections officer.  He testified that he, along with Mitchell, Frazier, and Doc Rex, arrived at Appellant's home at around 9:00 p.m. and began moving Mitchell's belongings.  After about thirty minutes, Appellant became belligerent and began yelling at Mitchell.  While Appellant was standing on his front porch and Mitchell was walking away from Appellant toward the trailer, Appellant threw a toolbox at her.  The toolbox hit Mitchell in the leg, causing her to fall.  At this time, Marty was standing in the trailer, moving items around.  Appellant then grabbed Mitchell by her arm and pulled her toward him.  Marty testified that Appellant began "choking" Mitchell with both of his hands around her neck.  Marty jumped off the trailer and attempted to separate Appellant from Mitchell.  Appellant tried to kick Marty, and Marty grabbed Appellant's ankle and pulled him off the porch.  Marty and Appellant continued their physical altercation, which led to Marty holding Appellant down on the ground until he became subdued.

_____

[1]We will refer to Appellant's father as "Wolfe" in this opinion.

2

Doc Rex also testified. His version of events matched that given by Marty, except that he stated he did not see Appellant throw the toolbox at Mitchell. Additionally, he testified that Mitchell was screaming while Appellant was strangling her and then fell silent. Mitchell stated that at this point, she passed out. During the altercation between Marty and Appellant, Doc helped Mitchell up and moved her out of harm's way.

When Mitchell awoke, she called 9-1-1 and told the dispatcher that Appellant had just strangled her. Deputy Daniel Moore arrived at Appellant's home. He noticed that Mitchell had bruising and scratches on her neck. Deputy Moore arrested Mitchell and Appellant for family violence.

Wolfe testified on behalf of Appellant. Wolfe stated that he saw Appellant throw the toolbox at Mitchell, but he said that it landed on the ground and did not hit her. According to Wolfe, Mitchell became angry and started cursing and yelling at Appellant. Mitchell walked up to the porch where Appellant was standing and began hitting him. Wolfe testified that, in response to Mitchell's actions, Appellant grabbed Mitchell by her collarbone and pushed her away. Based upon Wolfe's testimony, the jury was instructed on self-defense and on the lesser included misdemeanor offense of assault family violence by causing bodily injury.

*Analysis*

In his first issue, Appellant contends that the trial court erred when it admitted evidence of a prior act of violence committed by Appellant toward Mitchell. He contends that the evidence was inadmissible under TEX. R. EVID. 404(b). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold an evidentiary ruling on appeal if it is correct on any theory of law that finds support

3

in the record. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670–71 (Tex. App.—Eastland 2015, no pet.).

Mitchell testified that, about a week prior to July 27, Mitchell was sitting on the couch with her laptop when she became hot and turned on a fan. Appellant became upset, slammed her laptop shut, and threw it on the ground. Appellant acted as if he were about to punch Mitchell, but did not hit her. Mitchell went to the bathroom to get away from Appellant. Appellant followed her, his face red and his fists clenched by his side. Mitchell locked herself in the bathroom. Appellant threatened to kick in the door. Mitchell left the bathroom through a second door and hid in her daughter's bedroom. Once Mitchell believed Appellant was gone, she went back to the couch with the laptop. Appellant then walked into the room and kicked a glass table, shattering it. He threw a television off an armoire, ripped the blades off the fan and threw them at the wall next to Mitchell, and threw his phone through the wall. Mitchell went back into the bathroom and called the police. When Mitchell came back out of the bathroom, she saw Appellant leave the house with guns in his hands.

Appellant initially asserts that the trial court erred in admitting Mitchell's testimony without first making a threshold finding that Appellant committed the extraneous offense beyond a reasonable doubt. *See Harrell v. State*, 884 S.W.2d 154, 158 (Tex. Crim. App. 1994). In *Harrell*, the Court of Criminal Appeals held that, in deciding whether to admit extraneous offense evidence, the trial court must make an initial determination that a jury could find beyond a reasonable doubt that Appellant committed the extraneous offense. *Id.* at 161. When determining the relevance of evidence that depends upon the existence of other facts, a trial court "may admit the proposed evidence on the condition that the proof be introduced later." TEX. R. EVID. 104(b). The Court of Criminal Appeals has interpreted Rule 104(b) to mean that the trial court is not limited to "the initial proffer in determining

whether [R]ule 404(b) evidence . . . was properly admitted." *Fischer v. State*, 268 S.W.3d 552, 557 (Tex. Crim. App. 2008). In other words, the trial court may allow evidence of extraneous offenses, even if the State does not offer proof that the offense occurred beyond a reasonable doubt until after the proffer. *See id.* at 556–57.

Prior to Mitchell's testimony, the trial court heard arguments from counsel on Appellant's motion in limine regarding his alleged extraneous offenses that the State sought to offer at trial. The State's "Notice of Intent to Offer Evidence of Extraneous Crimes" identified the following extraneous offense:

> 4. One week before the assault in Midland County the defendant in a fit of anger broke several items in the house and in a threatening manner grabbed his guns and went to the shop on the property then later sent the victim a threatening text about guns. He also struck her on her upper body and held her down to the couch while accosting her verbally.

No testimony was presented by either side during the hearing on the motion in limine. The trial court denied Appellant's motion in limine with regard to item number four. The State then called Mitchell to the stand, and she described the extraneous offense discussed above. We conclude that, after hearing Mitchell's testimony, a jury could have found beyond a reasonable doubt that Appellant committed the extraneous offense. Thus, *Harrell*'s procedural requirement was achieved by the subsequent evidence offered at trial. *Id.* at 558.

Appellant also contends that this evidence was not admissible under any of the exceptions to Rule 404(b). The State argues that Appellant's assertion of self-defense put his intent in issue and "allowed the State to rebut the defense with evidence of other crimes, wrongs, or acts, or evidence of violent acts where Appellant was the aggressor." We agree with the State that intent was a contested issue because Appellant claimed that Mitchell was the aggressor and that he was

acting in self-defense. *See Render v. State*, 347 S.W.3d 905, 920–21 (Tex. App.—Eastland 2011, pet. ref'd).

A defendant's prior crimes or bad acts are generally inadmissible to prove that he has a bad character or a propensity to commit the offense charged. *Id.* (citing *Robinson v. State*, 844 S.W.2d 925, 928 (Tex. App.—Houston [1st Dist.] 1992, no pet.)). Such evidence, however, may be admissible for other purposes, such as proof of motive, intent, plan, knowledge, or lack of mistake or accident. TEX. R. EVIDENCE 404(b). "The 'other purposes' listed in Rule 404(b) are not exclusive or exhaustive but are merely representative." *Render*, 347 S.W.3d at 921 (citing *Robinson*, 844 S.W.2d at 929).

"When an accused raises a self-defense theory, the State may introduce evidence of prior violent acts where the accused was an aggressor in order to show his intent and to rebut the defense." *Render*, 347 S.W.3d at 921 (citing *Halliburton v. State*, 528 S.W.2d 216, 218 (Tex. Crim. App. 1975)). With respect to the challenged extraneous offense, Mitchell testified that Appellant acted as if he were about to hit her, followed her to the bathroom and threatened to kick the door down, damaged property, and threw fan blades in her direction. This evidence demonstrated an act of violence where Appellant was the aggressor. *See Lemmons v. State*, 75 S.W.3d 513, 523–24 (Tex. App.—San Antonio 2002, pet. ref'd) (in prosecution for murder, evidence that the accused had broken into homes, tied up the victims, and stolen cars and money at gunpoint demonstrated acts of violence where the accused was the aggressor and was therefore admissible). Mitchell's testimony about the extraneous offense was relevant to show Appellant's intent and to rebut Appellant's claim of self-defense during the subsequent altercation.

Appellant relies on *Pavlacka v. State*, 892 S.W.2d 897 (Tex. Crim. App. 1994), as support for his contention that Mitchell's testimony regarding Appellant's extraneous offense was inadmissible in this case. We disagree. In *Pavlacka*, the

Court of Criminal Appeals held that rebuttal of the defendant's denials that he committed the offense is not a proper purpose under Rule 404(b). *Id.* at 901–03. *Pavlacka* is inapplicable to this case. Appellant did not deny that the incident between himself and Mitchell took place. Rather, Appellant's theory at trial was that Mitchell was the aggressor and that Appellant was acting in self-defense. As discussed above, evidence of prior violent acts where Appellant was the aggressor is admissible to rebut a theory of self-defense. *See Halliburton*, 528 S.W.2d at 218; *Render*, 347 S.W.3d at 921; *Lemmons*, 75 S.W.3d at 513. Accordingly, the trial court did not abuse its discretion by admitting evidence of the extraneous offense. We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court committed error by allowing a juror to ask a question regarding an evidentiary matter. During a recess after the testimony of Marty Rex, the court brought in a juror who informed the bailiff that he had a question. With the attorneys for both sides present but without the other jurors, the juror asked:

> For purposes of credibility, I was curious about Mr. Rex, the reason he was no longer working in corrections or it was only three years. Was he dismissed for some type of reason or was he -- did he decide to leave for a higher paying job or something, some other reason?

The court responded that it could not answer the question because it could be considered a comment on the evidence by the court or an invasion of the trial strategy of the attorneys. The court also instructed the juror not to share the question or answer with the other jurors.

Immediately after the recess, the State recalled Marty. The attorney for the State asked Marty about why he left his employment as a corrections officer. Marty explained that he left because of low pay and lack of comradery with his coworkers. Marty was then excused. Appellant did not object when the juror asked the question,

7

when Marty was recalled and asked the same question, or when Marty gave his answer.

Appellant contends that the trial court erred in permitting the juror to ask the question. He contends that he was harmed by the alleged error because it permitted the State to "not . . . rely on its own resources" and allowed the State to put on evidence "of what jurors wanted to hear." We conclude that Appellant did not preserve his complaint for appellate review.

Texas has an adversarial system where the roles of advocacy and fact-finding are separated and given to the attorneys, on the one hand, and to the judge and jury on the other. *Morrison v. State*, 845 S.W.2d 882, 884–85 (Tex. Crim. App. 1992). Allowing a juror to participate in the trial, such as by questioning a witness, encourages jurors to depart from their role as factfinders and to assume an adversarial or inquisitive role. *Id.* at 885–87. A trial court commits reversible error when it allows jurors to become active participants in the solicitation of evidence. *Id.* at 888; *Gains v. State*, 966 S.W.2d 838, 841 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

Appellant relies on *Morrison* and *Gains*. Appellant is correct that both of these cases hold that allowing improper juror questioning may constitute reversible error. However, in both *Morrison* and *Gains*, the defendant objected at trial to the improper procedure. *Morrison*, 845 S.W.2d at 898–99; *Gains*, 966 S.W.2d at 841. "While *Morrison* stands for the proposition that juror questioning is always unlawful, it did not say that it could be raised for the first time on appeal." *Gains*, 966 S.W.2d at 843 n.1 (Anderson, J., dissenting); *see Guajardo v. State*, 870 S.W.2d 667, 669 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (an improper juror question to a prosecution witness was not preserved for appellate review because the defendant did not make a timely objection at trial).

In order to preserve a complaint for appellate review, a party must present the trial court with a timely request, objection, or motion stating the specific grounds for the desired ruling, if those grounds are not apparent from the context, and must obtain a ruling. TEX. R. APP. P. 33.1(a); *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012); *Ford v. State*, 305 S.W.2d 530, 532 (Tex. Crim. App. 2009). Preservation is a "systematic requirement" on appeal. *Ford*, 305 S.W.3d at 532. As noted by the Court of Criminal Appeals, "The purpose of an objection is to challenge the correctness of the action by the trial court to the end that such action may be corrected by the court itself, if deemed erroneous, and to lay the foundation for its review, if necessary, by the appropriate appellate tribunal." *Rogers v. State*, 640 S.W.2d 248, 264 (Tex. Crim. App. [Panel Op] 1981) (quoting 24 C.J.S. *Criminal Law* § 1670).

Appellant contends that "[t]he fact Appellant did not object to the juror asking the question is immaterial" because Appellant had no way of knowing what the juror's question would be before he asked it. We disagree with Appellant's conclusion that he was excused from preserving his complaint for appellate review. The harm that Appellant asserts that he suffered was the follow-up question that the prosecutor subsequently asked to Marty based upon the juror's question. Appellant had an opportunity to object to the prosecutor recalling Marty after the juror presented his question to the court. In this regard, the prosecutor prefaced his request to recall Marty on the following comment to the trial court: "Your Honor, in light of the juror's question, I think we're gonna recall Marty Rex briefly." Appellant also had an opportunity to object to the prosecutor subsequently asking the juror's question to Marty regarding why he left his employment as a correctional officer. Appellant did not preserve his complaint for appellate review because he did not object to the presentation of the juror's question to the witness. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


January 12, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.