**Rufus Harvey SEAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38318.**

Court of Criminal Appeals of Texas.

Oct. 4, 1965.

Rehearing Denied Nov. 17, 1965.

Charles W. Tessmer, Dallas (on appeal only), Emmett Colvin, Jr., Dallas (on appeal only), Thomas J. Upchurch, Jr., Amarillo (on appeal only), for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and Erwin G. Ernst, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is murder; the punishment, confinement in the Texas Department of Corrections for ten (10) years.

We shall pretermit a discussion of the facts, in view of our disposition of this case.

Appellant filed an application for a suspended sentence. In support of this application, he adduced testimony from his mother, Mrs. Irene Kite, that he had never been convicted of a felony in this or any other state. No questions were elicited showing either the good or bad reputation of the appellant as a peaceable and law-abiding citizen in the community in which he lived. The state did not ask Mrs. Kite any questions, making no cross-examination at all. The appellant adduced no further testimony in support of his application for a suspended sentence. The state put on no character witnesses, nor did it bring out any testimony on cross-examination from any witness, showing the reputation of the appellant.

Immediately after the state rested its case in chief, the prosecutor announced to the Court, out of the presence of the jury, "Judge, before you bring the jury in, I would like to announce to Mr. Nahas that I don't want to be unfair to my position or to their position, but if character witnesses are used, I have some 'have you heards' here that I can go into on the question of good faith, in the absence of the jury. If you want to, we can do it now." Appellant's counsel agreed and the prosecutor enumerated a series of offenses wherein he stated that he intended to ask character witnesses, if appellant put them on, "have you heard", followed by a recital of these various offenses charged against appellant. Appellant's counsel stated at this juncture that he was taken by surprise, and desired a conference with his co-counsel. Time was given for the conference by the Court. The record then reflects the presence of the jury in the box. Nothing further is shown; that is, no stipulation nor agreement, nor

anything to indicate a future course of action to be followed by the parties. In the course of cross-examination of appellant the prosecutor inquired, "Well, you have filed an application for a suspended sentence, have you not, sir?", and the witness responded, "I did, sir. Yes, sir." The prosecutor then asked this question, "And you would say that your reputation in the community as being a peaceful and law-abiding citizen is good?" Objection was then taken by appellant's counsel and before the Court made a ruling thereon, the prosecutor withdrew the question. This summary embraces the entire testimony adduced with reference to a suspended sentence or appellant's reputation as a peaceable and law-abiding citizen.

One of appellant's counsel, in his remarks to the jury in opening argument, stated that appellant had filed his application for a suspended sentence and that the state didn't come into Court and dispute the fact that appellant had never been convicted of a felony in Texas or any other state. Counsel further stated that, " * * * if he (the prosecutor) is fair with you, he will tell you, 'We searched the life of this young man and couldn't find anything against him.' And that is why they didn't try to show he had been convicted of a felony in Texas or some other state." Counsel further commented that various law enforcement officers were available to the state but that it remained "just as undisputed, that this young man had lived a good life. He has never been convicted, charged, arrested for anything, had any trouble whatsoever, until this present unfortunate tragedy." The state made no objection to this argument.

During the closing argument for the state the prosecutor replied to appellant's counsel, "He said we didn't find anything against him, that he has never been convicted, charged or jailed. Now, if he hadn't of said that, if he hadn't of given you the wrong impression, I wouldn't tell you what I am going to tell you, now. But since he has said that, it is my duty to answer it.

And in answer to that statement, I will tell you this. On June the 25th, 1952—" objection was then taken that it was on matters not offered in evidence and unsworn testimony, and the prosecutor replied that it was in answer to appellant's argument. The Court replied, "Well, it is in answer to your argument, Counsel." The Court then stated that "if you went out of the record, Counsel, he has a right to go out of the record." There was then some dispute among counsel as to just exactly what appellant's counsel had said in his opening argument, and the court reporter was requested to find out what the argument was, out of the presence of the jury.

The requested portion of the argument was read to the Court and attorneys out of the presence of the jury. The prosecutor was then sworn, out of the jury's presence. The Court then asked the prosecutor what he was going to say, and he replied that he was going to say that appellant was charged on June 25, 1952, with felony swindling; that he was filed on or charged on May 16, 1955, of being in possession or riding in a stolen automobile; and that he was charged on May 4, 1955, with being drunk. The Court then ruled, "The Court holds that the argument of Mr. Wolters, one of the defense counsel, to the effect that the defendant has never been arrested or charged with any offense or convicted of any offense, would authorize the District Attorney to make the argument that he has been arrested and charged with offenses. Now, it is true the record does not show that he has ever been convicted of a felony or a misdemeanor offense involving moral turpitude, but as to whether he has been charged or arrested for it, I think the District Attorney has the right to make that kind of argument." Objection was then taken that the argument is unsworn testimony (and it is not in answer to any argument of counsel). The jury was then brought in, at which time the prosecutor proceeded with his argument, "For the record, and in reply to Counsel's argument, and further for the record, I have

been sworn in this case, and the record shows that on * * *." Objection was then taken, "He has been sworn? Is he testifying as a witness here?" The prosecutor replied, "Well, you objected that it was unsworn testimony. And for the record, I am stating that I have been sworn, as you know." The Court, "He was sworn, in the absence of the jury, gentlemen." Objection was then taken that it was tantamount to re-opening the case and if it was going to be re-opened for that purpose, then it should be re-opened to allow appellant to reply to it. The Court stated, "Go on with the argument. I will deny you that right." The prosecutor then proceeded, "On June 25, 1952, the record of the Harris County Sheriff's Office—Police Department—reflects that Mr. Seay, Rufus Seay, the defendant in this case, was arrested for the offense of felony swindling; on May 16, 1955,"—objection was then taken "that it was highly inadmissible and is tantamount to the re-opening of the case. It is unsworn testimony, but I guess he is going to testify, anyway. It is not supported by the record, it is highly prejudicial and inflammatory, and no proper predicate has been laid for such argument. Also, there are no final convictions of any offense that are referred to and it is the proof of a specific act of misconduct and is not admissible to prove general reputation and it is also hearsay." The Court then replied that "it would not have been admissible as evidence, but Counsel for the state claims it is in answer to the argument of defense counsel." The Court then told appellant's counsel that if they wanted to take exception to anything else that the prosecutor stated, in the way of specific offenses, to wait until he gets through. The prosecutor then stated, "The record reflects that Mr. Seay, on May 16, 1955, was arrested for riding in a stolen car; and he was filed on under case No. etc." Objection was again taken, and the Court stated that the statement would not be admissible in evidence, "but he offers it in answer to the argument of defense counsel. I will admit his argument for that purpose." The

prosecutor then proceeded and stated that "the record reflects, in reply to Counsel's argument, that on November 6, 1954, Mr. Seay was filed on for the offense of vagrancy, before the Honorable W. C. Ragan, Justice of the Peace." Objection was again taken, and the Court once more stated, "None of it would be admissible in evidence, but by reason of the argument of defense counsel, the District Attorney is going out of the record to answer it. I will admit his argument, I overrule your objection." The prosecutor then enumerated various offenses and charges; that appellant was charged with misdemeanor theft; accused of being drunk; filed on for the offense of driving while intoxicated, paid a fine and served time in jail; arrested for allegedly stealing a car, gave an assumed name and paid a fine; was placed in jail for negligent collision at Dallas. All of these various offenses were particularized as to date, and each time the prosecutor mentioned one of them objection was taken and the Court gave the same ruling as previous. Objection was taken that the Dallas negligent collision offense didn't give the year. Inquiry was then made of the prosecutor, by one of appellant's counsel, "Where does this come from?" and the prosecutor replied: "Out of our file." The prosecutor then mentioned that appellant was filed on for drunk and aggravated assault in Galena Park and D. W. I. and for no Operator's License, on October 28, 1957. This concluded the prosecutor's statement as to the series of offenses and charges. Objection was taken in each instance and in each instance the Court stated, "All right. Same ruling." The Court then inquired, "All right. Are you through with it, Mr. Ernst?" Mr. Ernst replied, "Yes." The Court then stated, "I would state to the jury that none of that would be admissible in evidence, as you can only introduce proof to discredit a defendant by showing that he was convicted of a felony—not charged with it—but that he was actually convicted of a felony or of a misdemeanor involving moral turpitude, which is not too remote, which, as applied to this

defendant, would be, let's say, ten years. All right. You may go on. I have only permitted the District Attorney to make this argument, because he said it is in answer to argument of the defense counsel, Mr. Wolters, who went out of the record, according to the District Attorney's version of it, and the District Attorney claims he has a right to go out of the record to answer it." Counsel for appellant at this time then moved the Court to declare a mistrial due to the highly irregular proceedings, the motion was overruled and the prosecutor continued with his argument.

We held in Matthews v. State, 113 Tex. Cr.R. 457, 21 S.W.2d 1047, that the effect of an application for a suspended sentence was to put defendant's reputation in issue. In that case the state put on witnesses and showed defendant's bad reputation. Smith v. State, 165 Tex.Cr.R. 137, 305 S.W.2d 571, is similar factually to this case in that there the appellant's mother testified, as did the mother of appellant in this case, that he had never been convicted of a felony in support of his application for a suspended sentence. The court permitted two of the state's witnesses to testify in Smith's case that appellant's general reputation for being a peaceable and law-abiding citizen was bad, over objection that no predicate had been laid for such testimony in that appellant had not offered any testimony as to his character and reputation. We held that by filing his application for a suspended sentence appellant placed his reputation in issue, which authorized the state to introduce evidence on the issue. In Taylor v. State, 157 Tex.Cr.R. 124, 247 S.W.2d 127, the appellant testified that she had never before been convicted of a felony, but no witnesses for the state or the appellant had testified that appellant's general reputation for being a peaceable and law-abiding citizen was good or bad. The prosecutor then argued that appellant had not called a single witness to testify that she was a good girl, what a good life she had lived and that she was a peaceable, law-abiding citizen, and since this was her first

major crime she should receive a suspended sentence. Appellant objected to the argument and said it was an incorrect statement of the law relative to a suspended sentence. This Court said that when appellant filed her application for a suspended sentence, she placed her reputation as a peaceable and law-abiding citizen in issue and thereby authorized either party to introduce evidence upon that reputation. State's counsel was justified in arguing that appellant had the right to bring witnesses supporting her good reputation and thereby lend support to her application for a suspended sentence. Having the right to make such argument, state's counsel was equally justified in commenting upon the failure to call witnesses to attest her good reputation. In another Smith case, Smith v. State, 162 Tex.Cr.R. 237, 283 S.W.2d 936, a state's witness testified that he was acquainted with appellant's general reputation for being a peaceable and law-abiding citizen and stated that it was bad. Appellant objected on the ground that the state was attempting to go into his reputation prematurely. We held, "The court did not err in permitting the State, while putting on its testimony in chief, to offer proof as to appellant's bad reputation. The appellant having filed his application for a suspension of sentence placed his reputation in issue and either party was authorized to introduce evidence on such issue." In Scarber v. State, 156 Tex.Cr.R. 542, 244 S.W.2d 207, appellant filed an application for a suspended sentence and introduced a witness who testified that he had never been convicted of a felony in this or any other state. Nothing was asked about his general reputation, nor was it necessary to prove same to comply with the statutory requirement. We held that "[t]he filing of his application, however, gives the state the privilege of proving his general reputation in order that the jury may determine whether or not they want to give the party on trial the benefit of the suspended sentence law. *It does not give the state the authority to go into specific acts and conduct and to prove specific charges against defendant.*"

■■ It is obvious from what transpired upon the trial of this cause that both the state and the trial court were laboring under the misapprehension that it was proper to "fight fire with fire". True, appellant's counsel got outside of the record and made a statement not supported by the evidence, but we do not feel that his action in this respect licensed the prosecutor to go to the extreme ends that he did in replying. So far as we can determine, the error brought forward in this case is one of first impression in this state. We entertain no doubt that the prosecutor was given far greater latitude in replying than he was entitled to do. If the state is precluded from establishing by evidence specific prior offenses committed by an appellant or charged against an appellant in a case of this kind, and we readily agree that the state is prohibited from so doing, how then can the state adduce such proof at the time of its argument to the jury, or argue such specific offenses or charges? The state cannot do so. We do not feel that such an extension of judicial authority is necessary to protect the rights of the state, nor would such an extension insure a fair and impartial trial to a defendant. The remarks made by the prosecutor or the facts testified to by the prosecutor in this case (it is difficult from the record to determine whether the prosecutor was a witness or an advocate) were improperly admitted. Such remarks or evidence were no doubt highly inflammatory and prejudicial to appellant and stripped him of the fair and impartial trial that he was entitled to receive.

■■ The complained of testimony admitted as a "dying declaration" was properly received as an exception to the hearsay rule under the theory of "pain and suffering" and also because of its utterance being in close proximity to the event, would properly be admissible under the res gestae rule.

■■ We further observe that upon another trial of this cause the prosecutor should not be allowed to refer to appellant in such caustic language as "here is a man on his oath to God. He lies on his oath to God."

While the remarks of appellant's counsel seem to have been purposely or thoughtlessly made after notice by the prosecutor that he had some "have you heards", and he had fully apprised appellant's three attorneys the position of the state with reference to character witnesses, it is our conclusion that such remarks were not such as to open up the wide avenue of traffic for the state as was here done.

The judgment is reversed and the cause remanded.