**Perry Samathis BOOTY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42961.**

Court of Criminal Appeals of Texas.

June 17, 1970.

Rehearing Denied July 22, 1970.

Charles W. Tessmer, Dallas, for appellant.

Henry Wade, Dist. Atty., CaMille Elliott, Harry J. Schulz, Jr., W. T. Westmoreland, Jr., and John B. Tolle, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Judge.

The offense is robbery by assault; the punishment assessed by the court after a verdict of guilty, 50 years' confinement in the Texas Department of Corrections.

O. J. Batson, manager of the Texas Motel in the City of Dallas, testified that at approximately 1 a. m. on November 18, 1968, the appellant and two women entered the motel office and demanded money; that the appellant struck him several times with a revolver and took $581.34 in money, a billfold and a number of credit cards including one from E. M. Kahn's Department Store.

On November 20, 1968, the appellant appeared at E. M. Kahn's with two women and was arrested when he attempted to purchase merchandise using Batson's credit card. At the time of his arrest Batson's other credit cards and a billfold were found in his possession.

Batson identified the appellant after his arrest in a police lineup.

The appellant called Sandra Wilson and Justine Garner who testified he bore a strong physical resemblance to one James Young. On cross-examination Justine Garner acknowledged a shoplifting conviction in New Mexico and a theft conviction in Louisiana.

Rubin Howard testified James Young was his roommate on November 18, 1968,

and he had seen Young in possession of a billfold and that Young "did the robbery on Davis Street," the "Texas Motel, or something"; that it would be easy to mistake the appellant for Young.

The appellant's mother was called as an alibi witness but could not remember the exact date on which she had seen the appellant in relation to the date of his arrest. At one time she related she had seen him at his grandmother's when the other evidence showed he was already in jail.

Appellant's brother, another alibi witness, had the appellant sick in bed in October rather than November when the offense occurred.

Appellant claimed, while testifying in his own behalf, that he had been mistaken for James Young who resembled him. He contended the two women he was with in the E. M. Kahn's Department Store had possession of the billfold and the credit cards and the billfold was only lying beside him when he was arrested. He acknowledged prior convictions for felony theft and burglary.

■ Appellant's first ground of error reads:

"It was error for the State's attorney to refer to appellant's witness Rubin Howard as a homosexual during the State's cross-examination and final argument and to insinuate that the appellant and Rubin Howard had lived together during the State's cross-examination of Rubin Howard."

On cross-examination of the witness who had been referred to as "Mr. Howard" on direct examination, the record reflects the following:

"BY MR. CHAPMAN: (Prosecutor)

"Q. Is it Mrs. or Mr. Howard?

"MR. COIL: Your Honor, he can show, he can—

"MR. FITZGERALD: Are you making an objection?

"MR. COIL: He can show this man had a conviction to impeach him, but you can't go into other things.

"THE COURT: I sustain the objection to the question.

"Q. Don't they sometimes call you Ruby?

"A. Yes.

"MR. COIL: Your Honor, he's going back into that same thing.

"THE COURT: Overrule your objection.

"Q. Don't they call you Ruby?

"A. Yes, sir, they call me Ruby.

"THE COURT: Let's settle down, gentlemen, and try this lawsuit.

"Q. You haven't ever lived with Perry Booty, have you?

"A. Beg your pardon?

"Q. You haven't ever lived with Perry Booty, have you?

"A. No, I haven't."

During the closing argument prosecutor Chapman argued, without objection:

"You heard a defense of mistaken identity concerning James Young and look at the parade of witnesses you saw, Sandra Wilson, Justine Garner, twice convicted thief and Ruby or Ruben Howard.

"Now you all know as adults what Ruben Howard is. You can see what he, she or it is, whatever you want to call it. All Howard could tell you is that he had lived with old James Young at one time back there in November sometime he had a wallet, * * *."

The appellant relies upon Brown v. State, 168 Tex.Cr.R. 67, 323 S.W.2d 954. Brown, which involved a prosecution for a misdemeanor where the maximum punishment was assessed, can be distinguished since there direct questions were asked of the

witness as to whether or not he had engaged in homosexual acts with the defendant, and the questioning along this line persisted for some time. In the case at bar, no such questions were asked of the witness and he denied he had ever lived with the appellant.

There was no objection as to the complained of jury argument and nothing is presented for review.

While the insinuations, if such were intended by the prosecutor, were not proper, we are unable to conclude that in light of the record that the error is reversible error.

Ground of error #1 is overruled.

■ Next, appellant urges error occurred in the State's closing jury argument when the prosecutor argued that appellant and his appointed counsel uttered perjured testimony and blasphemous prayers.

The record reflects Mr. Chapman made the following statement near the beginning of his argument:

"*If* Mr. Coil is at this moment uttering a prayer to our Lord, it is just about as blasphemous a prayer as the perjured testimony that you heard come from this Defendant's mouth." (Emphasis supplied.)

The State concedes the argument was improper but points out that no objection was interposed and therefore the error is waived and nothing is presented for review. Van Bidder v. State, Tex.Cr.App., 371 S.W. 2d 880; 12 Texas Digest, Criminal Law, Sec. 728.

We agree.

The appellant relies upon Dykes v. State, 168 Tex.Cr.R. 215, 325 S.W.2d 135, and Seay v. State, Tex.Cr.App., 395 S.W.2d 40, but in each of those cases objections were timely made.[1]

In light of the record, however, we again repeat what was said in Dykes v. State, supra:

"This court has often pointed out that counsel for the state should not permit himself, in his zeal or in the heat of a trial, to stoop to abuse or vilification, which is not a substitute for legitimate argument."

Finding no reversible error, the judgment is affirmed.

---

1. In Dykes v. State, supra, the court held that an application of harmless error rule to the complained of jury argument was precluded in view of the punishment inflicted by the jury at the unitary trial. Here the punishment was assessed by the trial judge at the second stage of a bifurcated trial following the jury verdict.