Mary Helen HALLIBURTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 49457.

Court of Criminal Appeals of Texas.

July 16, 1975.

On Rehearing Oct. 15, 1975.

Roland H. Hill, Jr. and Harry L. Williams, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Tom E. Hill, William W. Chambers and Travis Young, Asst. Dist. Attys., Fort Worth, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder. The jury assessed the punishment at life.

The appellant admitted shooting her common-law husband, Willie Lee Scott, in the front room of their home. No one else was present. She claimed self-defense and no intent to kill.

The sole question for review relates to the proof of her shooting another man.

The State introduced a portion of her confession. Appellant introduced the remainder of the confession and testified that she shot the deceased after he had threatened her with a gun. She related that the deceased had a pistol and while sitting there "pranking with his gun in his hand" he had said, " 'Bitch, you know I'll kill

you.'" She stated that she went and got her pistol and tried to calm him down. He put the pistol back in his pocket and she put hers back under the pillow on the couch. About five minutes later the argument was renewed. According to the appellant, the deceased hit her with his pistol and knocked her down. She reached under the pillow on the couch, got her gun and came up shooting. She said that she was not trying to kill him but only to stop him. He grabbed her, they "tusseled," he hit her on the side of the head again with his pistol and they fell to the floor. While wrestling, she shot him.

After the defense rested the State called Morris Myers who testified that the appellant, in her car, pulled up beside him while he was walking on South Calhoun Street in Fort Worth. She stopped the car and asked him for money that he owed her. He told her that he didn't have any money and then the appellant picked up her pistol, got out of the car and shot him in the side as he ran. This happened some five weeks after the shooting in the present case.

The appellant complains that the court erred in admitting the testimony of Myers.

The issue of self-defense and no intent to kill was raised during appellant's testimony when the following occurred:

"Q. (By defense attorney) . . . When you reached up under the couch and got your gun and came up shooting, were you shooting at Scott, trying to kill him?

"A. (Appellant) No, sir, I wasn't shooting at him or trying to kill him.

"Q. What were you trying to do?

"A. I was trying to stop him. I figured if I shot at him he would stop.

"Q. . . . Now, you were merely trying to stop him when you came up shooting?

"A. Yes, sir, I was."

The above testimony concerned appellant's initial shooting at the deceased and prior to the wrestling on the floor where she killed him. Then she testified as follows:

"Q. Now, Mary, at the time you shot him and at the time you went to the ground there and tusseled him, did he have his gun in his hand?

"A. Yes, sir, he did.

"Q. I'll ask you, Mary, at that time, were you scared that he was going to do you bodily injury or kill you?

"A. Yes, sir, Mr. Williams, I was scared to death.

"Q. All right. Now, let me ask you this, Mary: At all times that this was going on out there, did you want to kill Scott?

"A. No, I loved him.

"Q. You did not want to kill him?

"A. I really did not want to kill him.

"Q. Why did you shoot him when you shot him there the last time?

"A. I was trying to stop him period. It was either him or me. Mr. Williams, that man was going to kill me.

"Q. You actually thought he was going to kill you from what he had done?

"A. I definitely knew he was, Mr. Williams."

On cross-examination the following occurred:

"Q. Isn't it a fact that you were just plain mad at him?

"A. No, it is not.

"Q. You didn't ever intend to kill Scott, did you?

"A. No, sir, I didn't. How can you kill something you love?"

The trial court in its charge to the jury instructed the jury to limit its consideration of the extraneous offense in passing upon the weight given to the appellant's testimony and for no other purpose.

The issue in this case is whether the shooting of Myers was material and relevant to a contested issue on the case.

■ It has long been the rule in this jurisdiction that one on trial is to be tried for the offense charged and not for remote or disconnected crimes or for being a criminal generally. See 1 Branch's Ann.P.C.2d, Section 188. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972), outlines numerous situations in which evidence is admissible even though it tends to show an extraneous offense. The Court noted that an extraneous offense could be introduced "to refute a defensive theory raised by the accused." See *Ratcliff v. State*, 504 S.W.2d 883 (Tex. Cr.App.1974), and the cases it cites.

■ The appellant testified to self-defense and that she had no intent to kill. She wanted the jury to believe her testimony. The State was authorized to show that she shot another man some time later to show her intent which tended to disprove her testimony. Appellant cites *Lolmaugh v. State*, 514 S.W.2d 758 (Tex.Cr.App.1974). Lolmaugh shot and killed his wife's lover. The appellant claimed self-defense. This Court held that a part of his confession in which he admitted to a prior shooting of a man who had been his wife's lover was admissible. When the appellant raised the issue of self-defense, motive became an issue. The prior shooting tended to show Lolmaugh's state of mind at the time he committed the offense for which he was charged.

In *Lolmaugh* there was the additional fact of the motive of the defendant. The fact that *Lolmaugh* is a stronger case for the admission of the extraneous offense does not make the testimony in the present case inadmissible.

In *Blankenship v. State*, 448 S.W.2d 476 (Tex.Cr.App.1969), the defendant there claimed the defenses of alibi and that he had been "framed." Evidence of a subsequent robbery involving the appellant reasonably and logically tended to defeat the

defenses urged and, therefore, was admissible.

The record contains no objection to the charge limiting Myers' testimony, and nothing is presented for review.

There being no reversible error, the judgment is affirmed.

ODOM, J., dissents.

ROBERTS, Judge (dissenting).

There is a clear distinction between this case and *Lolmaugh v. State*, 514 S.W.2d 758 (Tex.Cr.App.1974), upon which the majority so heavily relies.

In *Lolmaugh*, the appellant was convicted of the murder of his wife's current lover. There the appellant took the stand and by his testimony raised the issue of self-defense, and hence of motive. The State then introduced a portion of appellant's confession in which the appellant admitted shooting another man who had also been his wife's lover. This Court held that the extraneous offense was admissible since:

> "[P]roof that [appellant] had shot another of his wife's lovers would tend to prove his motive in the present case. This would tend to show his state of mind *toward a class*, lovers of his wife, and this state of mind or motive was such that he would shoot members *of that class*." *Lolmaugh v. State*, supra, at 759. (Emphasis added)

In *Lolmaugh*, the Court relied on *Dillard v. State*, 477 S.W.2d 547, 551 (Tex.Cr.App. 1972), where we said:

> "Where the accused has threatened or shown a feeling of ill-will or animosity towards all parties *of one class* then these threats or offenses may be admitted into evidence even though they show extraneous offenses. (Emphasis added.)"[1]

In the instant case, appellant was convicted for the murder of her common-law husband, Willie Lee Scott. The extraneous

---

1. The extraneous offense in *Dillard* was admitted to show appellant's hostility to blacks as a class.

offense involved the shooting of Morris Myers some five weeks later. Myers testified that he had known appellant for "about four years."[2] At trial Myers specifically denied having lived with appellant during the five-week period after the death of Scott, although he admitted spending time at her house both before and after the death of Scott. According to Myers's testimony, appellant shot him after he encountered her on the street and refused to pay her the money he owed her. In no way does Myers's testimony reflect that he and the appellant were lovers or that they had any relationship comparable to that of husband and wife, or that any "intimate" relationship between them in any way brought about the extraneous offense.

On these facts, there is simply no "one class" of individuals into which both Scott and Myers fit, unless we consign them to the "class" of male human beings generally. Compare *Ford v. State,* 484 S.W.2d 727 (Tex.Cr.App.1972).

I would hold as we did on original submission in *Alvarez v. State,* 511 S.W.2d 493, 495 (Tex.Cr.App.1974), that:

"While the record does indicate that appellant offered some evidence to raise an issue of self defense, proof of an extraneous offense is in no way probative of appellant's state of mind at the time of the killing in the instant case. Cf. *Ford v. State,* supra; *Rodriguez v. State,* [486 S.W.2d 355 (Tex.Cr.App.1972)]."

See also *Jackel v. State,* 506 S.W.2d 229 (Tex.Cr.App.1974).

The effect of the majority opinion is to destroy the well-established rule that "before extraneous offenses may be properly admitted into evidence, there must be some common distinguishing characteristics, or a series of distinguishing characteristics between the offense charged and the extraneous offense. In the absence of such a rule, remote and completely unrelated offenses might be recited to the court in order to show that defendant is simply a bad character, or a criminal generally." *Newman v. State,* 485 S.W.2d 576, 577–578 (Tex.Cr.App. 1972). See also *Ford v. State, supra.*

The judgment should be reversed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

It has been suggested that reliance upon *Lolmaugh v. State,* Tex.Cr.App., 514 S.W.2d 758, was misplaced. Even if this is correct, we remain convinced that the proper result was reached.

■ The ultimate question is whether the extraneous offense tends to disprove the appellant's explanation of the primary offense. The presence or absence of similarity is not entirely determinative of the admissibility of the extraneous offense. If the extraneous offense is relevant in tending to disprove the defensive theory, it should be admissible. *Albrecht v. State,* Tex.Cr.App., 486 S.W.2d 97. See *People v. Morehouse,* 328 Mich. 689, 44 N.W.2d 830, 34 A.L.R.2d 676.

■ In the case at bar it should be borne in mind that the State's case showed an unprovoked killing; the appellant stated that she had acted in self defense. Then, in order to refute or disprove this defense which she had injected in the case, it became relevant to prove that on another occasion she shot another man under circumstances which clearly showed that she had not acted in self defense. Once appellant raised the issue, the State could bring forward evidence, not otherwise admissible, that refuted her explanation of the shooting.

Having concluded that evidence of the second shooting was admissible, the appellant's motion for rehearing is overruled.

**2.** Myers later testified that he had known appellant for "a year or more."

ROBERTS, Judge (dissenting).

While I adhere completely to my original dissenting opinion in this case, I must again express my disagreement with the position of the majority.

The effect of the court's holding on rehearing is to allow in evidence *any* extraneous assault in *any* murder case where the defendant takes the stand and states that she acted in self-defense. Not all such assaults "have a direct tendency to prove guilty knowledge or intent." 23 Tex.Jur.2d 308, Evidence, Sec. 198. Therefore, only those which do have such a "direct tendency" should be considered relevant and admissible. This is why we have previously required extraneous offenses to bear a substantial similarity to the main offense. *Newman v. State*, 485 S.W.2d 576 (Tex.Cr.App.1972).

Now, however, the rule is changed by simple judicial fiat. The majority states that the presence or absence of similar characteristics is one factor to be considered in determining whether an extraneous offense will be admitted. However, the majority then makes clear that it is, in fact, no factor at all. The majority has created a balancing test with all weights on one side of the scale. Not considered is the right of the accused not to be tried as a criminal generally, *Seay v. State*, 395 S.W.2d 40 (Tex.Cr.App.1965), or his right to testify in his own behalf, Art. I, Sec. 10, Vernon's Ann.Tex.Const.[1]

As it is, however, the majority is creating a rule—without guidelines or safeguards—which forces an accused to an unconstitutional choice between these two fundamental rights. If a defendant chooses to testify and urge that she acted in self-defense, as did the appellant here, she automatically waives her right to be free of evidence of her general criminal past. The converse is of course equally true: by choosing not to take the stand the accused prevents the State from using such evidence, but is thereby forced to forfeit the important right to put before the jury relevant, and perhaps exculpatory, facts.

I do not propose that an accused should never be forced to choose between these rights. There are many situations which allow the introduction of extraneous offenses. See *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

In all of those situations, however, adequate guidelines and safeguards are present. This is not true in this case, or the ones which will inevitably follow its vague and prejudicial holding. Criminal defendants, clothed with the presumption of innocence, should not be required to make this unconstitutional choice between two fundamental rights. Compare *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

I would reverse and remand.

ODOM, J., joins in this dissent.

---

1. Our former requirement of substantial similarity protects these important and valuable rights. E. g., *Newman v. State*, supra.