

# NUMBER 13-19-00208-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

FRANCISCO DELGADO,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

### On appeal from the 105th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Hinojosa**

Appellant Javier Francisco Delgado was convicted of murder, a first-degree felony, and sentenced to ninety-nine years' imprisonment in the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 19.02(c). By one issue, Delgado argues the trial court abused its discretion when it admitted a previous aggravated assault with a deadly weapon conviction into evidence during trial to rebut Delgado's claim of self-defense. We

affirm.

I.    BACKGROUND

**A.    The Incident**

On June 30, 2016, Delgado and Alex Martinez got into a physical fight at the Entourage Bar in Nueces County, Texas. According to eyewitness Tino Ramirez, who was playing pool with Martinez, Delgado approached Martinez and punched Martinez in the face after a few words. Ramirez recalled that Martinez fought back. When other bar patrons intervened, Ramirez noticed that Martinez "was bleeding from his head." Ramirez said that Martinez was then chased outside. The next time Ramirez saw Martinez, Martinez was outside, lying face-down in the parking lot between two cars, surrounded by a crowd.

Casey Barton, a club patron that evening, testified that she was outside the bar smoking when she saw Martinez "ducking down, walking" in the parking lot when "he was hit from behind." She witnessed Martinez "get[ting] hit numerous times and then falling down by a car and getting stomped" on and "kicked" by a man who was clean-shaven with a buzz-cut. She did not see any weapons.

Paramedic Homero Garza testified that he and his partner found Martinez face down in a pool of blood between two cars. Garza and his partner rolled Martinez over, secured him to a backboard, placed him in a stretcher, and onto the ambulance. As the driver headed to CHRISTUS Spohn Memorial Hospital, paramedics cut off Martinez's clothing to identify his injuries. Garza noted that Martinez had "deep lacerations" toward the center of his chest and also "an evisceration towards his lower left abdomen," meaning his intestines were exposed. When Garza placed CPR pads on Martinez's chest to

2

monitor cardiac activity, Garza recalled it was "flat-lined." The medical examiner, Dr. Ray Fernandez, concluded that Martinez's cause of death was multiple stab wounds.

Corpus Christi Police Department (CCPD) Officer Lonnie Jackson arrived at the scene with Officer Tim White. They parked their vehicles in a manner to protect the crime scene. Officer White noticed about forty to fifty people outside Entourage. Officer Jackson saw an unresponsive Martinez lying on the ground in blood and recalled that medics immediately attended him and transported him to the hospital in an ambulance. Both officers entered the bar to establish the crime scene. Officer Jackson stated that "it was hard to get everybody to cooperate. A lot of people already left. We were able to get some of the wait staff and a few of the customers." Officer Jackson noticed blood by the pool table. He spoke to Ramirez, Barton, and a member of the band playing there that night named Max Lucio. Of note, although officers spoke to witnesses who saw Martinez and Delgado throwing punches, no witness testified to seeing any stabbing. Officers did not locate a weapon or get the name of a possible suspect, either.

CCPD Lead Crime Scene Investigator William Alan Kirksey was dispatched to the scene at 2:20 a.m. When he arrived, he met with Detective Lee Galloway and immediately noticed two vehicles parked in front of the doorway to the club. He noticed a "big pool of blood in between those vehicles," as well as a bloody shoe. He also noticed blood spatter on one of the vehicle's front driver's headlights, blood smears and spatter on the engine hood, and blood spatter and smears on the driver's side door. He saw a blood trail on the sidewalk with bloody shoe impressions. He collected blood samples from all these locations and submitted them to the Texas Department of Public Safety for testing. He

3

collected blood samples inside the building, as well. He further collected a bloody baseball cap, a cell phone, and a cigarette box from inside the bar, and took them back to the CCPD Forensic Services lab to process them for latent fingerprints.

Detective Galloway was the lead investigator for this crime. He recalled it took him approximately three weeks to find the potential suspect in this case, Delgado. When Delgado was identified, Detective Galloway contacted him by phone and asked him to interview at the police station. Prior to the interview, Detective Galloway sought a warrant to take a buccal swab from Delgado, which is a swab taken "inside the cheek to collect DNA that can be analyzed by DNA analysis." When Delgado arrived for his interview, Galloway performed the buccal swab. After being swabbed, Delgado denied being present at the Entourage bar the evening of June 30 and left. The next day, Delgado returned for a second interview. Detective Galloway read Delgado his *Miranda* rights. Although Delgado initially repeated his assertion that he was not at Entourage the night of Martinez's death, he ultimately confessed that he was there and stabbed Martinez with a knife outside the bar in self-defense.

Lisa Harmon Baylor, with the DPS Crime Laboratory in Corpus Christi, performed DNA testing on the evidence obtained from the crime scene. Her testing found Delgado's blood on the hat, shoe, sidewalk, vehicle, and parking lot swabs Kirksey collected the night of Martinez's death.

**B.     Trial**

Delgado asserted self-defense as an affirmative defense at trial. Both the State and Delgado questioned the jury panel about self-defense during voir dire. Delgado also

4

mentioned self-defense during his opening statement, stating, "You will hear that [Delgado] confessed. He confessed to this back in July of 2016. He confessed and told them he acted in self-defense."

Before the testimony of Detective Galloway and outside the presence of the jury, the State announced that it wanted to introduce a similar prior conviction of aggravated assault with a deadly weapon[1] to refute Delgado's assertion of self-defense. "[W]e wanted to put on a similar case that he's convicted . . . of ag[gravated] assault with a deadly weapon where he also stabbed somebody and he alleged self-defense in that case as well." Delgado objected that admitting this offense was improper character evidence under Texas Rule of Evidence 404(b) because the State was trying to show that Delgado was acting "in conformity" with this type of violent behavior. *See* TEX. R. EVID. 404(b). Delgado further objected that, even if the prior offense was permissible under rule 404, its probative value did not outweigh the harm of unfair prejudice under rule 403. *See id*. R. 403. The State, on the other hand, argued as follows:

> Judge, it's offered to rebut his defensive theory of self-defense. . . It's not being offered to prove a character trait, it's being offered to rebut his defensive theory of self-defense. And the law says that once an individual starts putting on self-defense on his opening statement or putting on witnesses, whenever he opens up to making it a self-defense issue, we have the right to rebut it with prior convictions or other, Your Honor. Here we have a certified copy, and he was given notice that we were going to offer it in our case in chief to rebut.

The trial court overruled Delgado's objections and allowed the conviction into

---

[1] The prior conviction was Cause Number 15CR4388-F from the 214th Judicial District Court of Nueces County, Texas. The offense occurred on December 13, 2015, and Delgado was sentenced to five years in the Texas Department of Criminal Justice—Institutional Division.

evidence during Detective Galloway's direct examination. Detective Galloway testified that Delgado had a prior aggravated assault with a deadly weapon conviction with a certified copy of the judgment. Galloway verified that the certified judgment bore Delgado's state identification number. This was the extent of the testimony regarding the prior conviction during the guilt/innocence phase.

Delgado re-asserted his objections about the prior extraneous offense during the jury charge conference. In response, the trial court inserted a limiting instruction in the jury charge. The instruction read as follows:

> The State offered the evidence to rebut the Defendant's theory of self-defense. You are not to consider that evidence at all unless you find beyond a reasonable doubt that the Defendant did, in fact, commit the wrongful act. Those of you who believe the defendant did the wrongful act may consider it. Even if you do find that the Defendant committed a wrongful act, you may consider this evidence only for the limited purposes I have described. You may not consider this evidence to prove the defendant is a bad person, and for this reason was likely to commit the charged offense. In other words, you should consider the evidence only for the specific limited purpose I have described. To consider the evidence for any other purpose would be improper.

The jury convicted Delgado of murder. During the punishment phase of the trial, the State argued, "[L]ook at his track record. Five months before he killed Mr. Alex Martinez, he stabbed somebody else multiple times and was convicted of aggravated assault with a deadly weapon." The jury sentenced Delgado to ninety-nine years in prison. *See* TEX. PENAL CODE ANN. § 19.02(c). Delgado appeals.

## II. STANDARD OF REVIEW & APPLICABLE LAW

The Texas Court of Criminal Appeals has held that "it has long been the rule in this jurisdiction that one on trial is to be tried for the offense charged and not for remote or

6

disconnected crimes or for being a criminal generally." *Halliburton v. State*, 528 S.W.2d 216, 218 (Tex. Crim. App. 1975). Texas Rule of Evidence 404(b), which deals with prior offenses, provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." TEX. R. EVID. 404(b). Evidence of other crimes, wrongs, or acts is, however, permissible for certain purposes, such as: motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id.*

If evidence is permissible under Rule 404, it can still be objectionable under Texas Rule of Evidence 403. *See id.* R. 404, 403. Rule 403 provides that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *See id.* R. 403. When a defendant objects to evidence under Rule 403, the trial court must weigh the evidence's probative value against any danger of unfair prejudice. *See id.*; *Santellan v. State,* 939 S.W.2d 155 (Tex. Crim. App. 1997). The trial court fulfills this balancing requirement when there is a specific Rule 403 objection by a defendant and the trial court overrules that objection and admits the exhibit into evidence. *See Santellan*, 939 S.W.2d at 171.

The trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that

7

has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobanco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

We review a trial court's ruling on the admissibility of extraneous evidence under Rule 404(b) under an abuse of discretion standard. *See Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). We review the admission of evidence over a Rule 403 objection under the same standard. *See Manning v. State,* 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

### III. ANALYSIS

Delgado's only issue on appeal is that the introduction of the extraneous offense evidence during guilt/innocence was improper.

First, we address Delgado's objection to the admission of the extraneous offense under Rule 404(b). *See* TEX. R. EVID. 404(b). Texas courts have recognized that an extraneous offense can be introduced "to refute a defensive theory raised by the accused." *Halliburton*, 528 S.W.2d at 218; *see also Robinson v. State*, 844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.) ("[a]n extraneous offense may be used to rebut a defensive theory, such as self-defense, even though this purpose is not mentioned in Tex. R. Crim. Evid. 404(b)"); *Carter v. State*, No. 06-02-00174-CR, 2004 WL 726252, at *4 (Tex. App.—Texarkana Apr. 6, 2004, pet. ref'd) (mem. op., not designated for publication) (same). "When the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the

8

defendant was an aggressor." *Robinson*, 844 S.W.2d at 929 (citing *Halliburton*, 528 S.W.2d at 218).

In *Halliburton*, the defendant shot her husband after claiming he had threatened her life and they were in the throes of a physical fight. *See Halliburton*, 528 S.W.2d at 217. No one else was present in the home. *Id*. The high court held that "appellant testified to self-defense and that she had no intent to kill." *Id*. at 218. Thus, the court reasoned that "[t]he State was authorized to show that she shot another man [at another time] to show her intent which tended to disprove her testimony." *Id*. Similarly, in the case at bar, although there were witnesses to Delgado and Martinez's fight inside the bar, there was no evidence that it was necessary for Delgado to use a knife to stab Martinez outside. Instead, the evidence established that Delgado approached Martinez and punched him in the face, and when Martinez was leaving the bar, he "was hit from behind." We hold the trial court did not abuse its discretion in admitting Delgado's previous conviction under Rule 404(b), where Delgado was also found guilty of stabbing someone with a knife and claimed self-defense. *See id*. Texas case law is clear that prior convictions are admissible to refute defensive theories at trial; here, the State introduced evidence to rebut Delgado's affirmative defense and to show his intent. *See id*.; *Robinson*, 844 S.W.2d at 929; *Rogers v. Peeler*, 146 S.W.3d 765, 773 (Tex. App.—Texarkana 2004, pet. denied) (where a trial court admitted two prior violent acts to refute defendant's assertion of self-defense).

Next, we address Delgado's Rule 403 objection. *See* TEX. R. EVID. 403. Our analysis will track the *Giglioblanco* factors. *Gigliobanco*, 210 S.W.3d at 641–42. Regarding the first and second factors, Delgado's prior offense was probative and

necessary for the State because none of the witnesses saw the actual stabbing. *Id.* at 641. Although Ramirez and Barton recalled a physical fight, no one witnessed the stabbing that occurred between Delgado and Martinez when they were fighting in between two vehicles in the parking lot. The only evidence at trial that the stabbing was in self-defense was from the defendant's statement to police. *See id.*; *Halliburton*, 528 S.W.2d at 217. Third, there was a minimal tendency that the evidence would suggest a decision on an improper basis because the trial court gave an explicit limiting instruction to the jurors. *See Gigliobanco*, 210 S.W.3d at 641. The charge explained that jurors could not "consider this evidence to prove the defendant is a bad person, and for this reason was likely to commit the charged offense." This charge instruction also minimized confusion, did not distract the jury from the main trial issues, and did not give undue weight to the probative force of the evidence, which addresses the *Giglioblanco* fourth and fifth factors. *Id.* at 642. Sixth, the admission of the prior aggravated assault with a deadly weapon crime occurred briefly during the direct examination of Detective Galloway. The record shows the State did not discuss the particulars of the prior conviction, ie: that is was a previous aggravated assault with a knife, until the punishment phase of the trial after Delgado was found guilty. Therefore, the presentation of this evidence did not consume an inordinate amount of time or repeat previously admitted evidence. *See id.* We thus conclude that the trial court did not abuse its discretion in admitting this extraneous offense over Delgado's Rule 403 objection. *See Manning,* 114 S.W.3d at 926; *Dabney*, 492 S.W.3d at 318; *Cantrell v. State*, 731 S.W.2d 84, 91 (Tex. Crim. App. 1987) (holding that, when admitting an extraneous offense to rebut a defensive

10

theory, "the probative value of the evidence outweighed its potential prejudicial effect").

## IV. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of November, 2020.